UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Michael S. Kimm, Esq. (MK4476)
KIMM LAW FIRM
333 Sylvan Avenue, Suite 106
Englewood Cliffs, NJ 07632
Tel 917-477-8500
*Attorneys for Plaintiff*

| | |
|---|---|
| CHRISTINE GESWALDO and RACHEL GESWALDO,<br><br>     Plaintiffs,<br><br> - against -<br><br>MARK S. GOTTLIEB, CPA, and MARK S. GOTTLIEB, PC,<br><br>     Defendants. | 2023-cv-<br><br><br><br><br><br>**Complaint with Jury Demand** |

  This is a malpractice action against a putative "economic loss expert" in an underlying partnership dispute litigated in the Superior Court of New Jersey; and plaintiffs allege the following facts upon knowledge, and otherwise upon information and belief, against the above-named defendants:

**THE PARTIES**

  1. At all relevant times, plaintiff Christine Geswaldo is an individual residing in Hasbrouk Heights, Bergen County, New Jersey and was a beneficiary of defendants' service as a putative damages-expert witness, as more-fully described below. Christine Geswaldo was a one-third partner of Geswaldo Associates.

  2. At all relevant times, plaintiff Rachel Geswaldo is an individual residing in

1

Hasbrouk Heights, Bergen County, New Jersey and was a beneficiary of defendants' service as a putative damages-expert witness, as more-fully described below. Rachel Geswaldo was a one-third partner of Geswaldo Associates.

3. At all relevant times, defendant Mark S. Gottlieb, CPA, PC, is a professional entity having its address at 1270 Avenue of the Americas, 7th Floor, New York, NY 10020 and is believed to the entity through which its principal Mark S. Gottlieb engages in the practice of certified accounting and related services.

4. At all relevant times, defendant Mark S. Gottlieb is an individual/professional is believed to be the sole shareholder/principal of the CPA/PC entity and practices at the same address, 1270 Avenue of the Americas, 7th Floor, New York, NY 10020.

5. Defendants, collectively, were retained to serve as plaintiffs' putative economic loss experts in plaintiffs' partnership dispute with the former third partner, George Geswaldo, plaintiffs' older brother who died in March 2017, as well as his wife Joan Geswaldo.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action under 28 U.S.C. 1332(a) in that plaintiff are each a domiciliary of the State of New Jersey and defendants are each a domiciliary of the State of New York and the amount in controversy exceeds the sum of $75,000.00 exclusive of costs and interest.

7. Venue is proper in this District in that substantial events occurred in this district and defendants are otherwise based in this district and transact business within New York County.

## FACTS COMMON TO ALL CLAIMS

8. Between 2017 and 2022, plaintiffs were involved in a partnership dispute concerning Geswaldo Associates, a New Jersey partnership, in which plaintiffs Christine Geswaldo and Rachel Geswaldo were partners with their late, oldest sibling, George Geswaldo, who died in March 2017 and was survived by his wife Joan Geswaldo.

9. The nature of the partnership dispute, and plaintiffs' claims against the underlying-defendants George Geswaldo and Joan Geswaldo, were that the underlying-defendants had committed embezzlement over their 13 year operation of the partnership; engaged in self-dealings and self-gains; and had failed to properly account for partnership revenue to plaintiffs.

10. The partnership dispute was commenced in 2017, in the Superior Court of New Jersey, Bergen County; re-commenced in 2020, and was tried without a jury in March 2022.

11. During pretrial discovery, on or about February 21, 2019, plaintiffs retained defendants to serve as their putative "damages expert" and paid a $7,500.00 initial retainer fee by check number 5565 drawn on a Bank of America joint account held by Christine Geswaldo. A retainer agreement was signed at that time.

12. The Geswaldo Associates partnership dispute involved a narrow set of revenue data from three sources: (1) a commercial building located at 95 Del Glenn, Lodi, New Jersey, who had no mortgage, no labor expense, and had only routine maintenance expenses and real estate taxes to pay, since when the building was left by the partners' father, Joseph Geswaldo, in approximately 1992; (2) a two-bedroom condominium apartment in Boca

Raton, Florida, which also had no mortgage, no labor expense, and only routine maintenance and real estate tax to pay; and (3) a 25% interest in a land/lease partnership known as Fairfield Holdings in Fairfield, New Jersey.

13. The yearly volume of records for all three properties were relatively sparse; even the most valuable and "active" business, the Lodi building, had under ten tenancies and rarely tenants vacated the building, with many of them remaining in their tenancies for decades.

14. After defendants were paid their initial retainer, plaintiffs provided defendants with documents and information developed during the underlying-case discovery, which consisted of relatively simple, sparse set of financial records from the three sources of revenue and expenses described above.  Plaintiffs and plaintiffs' counsel responded to any and all requests of the defendants for available documentation and information.

15. From approximately May 1, 2020, defendant began to build an "initial loss table" based upon rental income at the principal source of revenue for the Geswaldo Associates partnership, namely the Lodi building, based upon the rent roll that had existed or imputed for the past 13 years, minus expenses, with the resulting net income being multiplied by the number of years during which George Geswaldo embezzled from plaintiffs.

16. On January 14, 2021, plaintiffs' counsel requested that defendants complete their case assignment.  On March 12, 2021, defendants stated that they "Will look at it Monday.  Thanks."  Between June and July 2021, defendants communicated with plaintiffs and focused on their assignment.  On August 9, 2021, after plaintiffs requested a streamlined version of their loss analysis, defendants provided plaintiffs with a cover email and report.

17. During the course of August and September 2021, on multiple phone conferences, plaintiffs' counsel Michael Kimm advised defendant Mark Gottlieb that the trial date had been set for March 2022.

18. On or about February 7, 2022, plaintiffs' counsel, again, informed defendants about the trial date of March 7-9, 2022, and the need for defendants' appearance on March 8 or 9.

19. On February 28, 2022, plaintiffs' counsel, again, informed defendants about the trial date of March 7-9, 2022, and the need for defendants' appearance on March 8 or 9, and that Gottlieb should be ready to testify on the afternoon of March 8.

20. On or about February 28, 2022, defendants stated that Gottlieb's trial attendance required a $5,000.00 advance payment. On March 1, 2022, a check for the requested sum drawn on the bank account of Christine Geswaldo was sent to defendants by FedEx courier service, and promptly deposited by defendants.

21. On or about March 1, 2022, plaintiffs' counsel advised Mark Gottlieb by telephone that he was not expected to travel from White Plains to Hackensack, New Jersey, as the trial was being conducted fully virtually by Zoom video conferencing system operated by the court. This arrangement enabled defendants to avoid time loss in traffic and made it convenient for defendants to fulfill their professional responsibility from the convenience of their own offices.

22. On March 7, 2022, at 4:42 PM, after a full day of non-jury trial had been conducted, plaintiffs' counsel's assistant emailed defendants that Mark Gottlieb was

expected the next afternoon, March 8, 2022, at 1:30PM.

23. On the morning of March 8, 2022, at approximately 8:30AM, as plaintiffs waited in their attorneys' conference room for the second day of trial to begin, defendant Mark Gottlieb telephoned plaintiffs' counsel, and Michael Kimm took the call from the conference room and used the speaker phone mode. Mark Gottlieb stated during this call, "I just relocated to a new office and I am not even unpacked yet, and I cannot find your file." Plaintiffs were in total shock as was their attorney, Michael Kimm.

24. In sum and substance, Gottlieb stated that, because defendants could not "find the case file," they would not attend the trial on the afternoon of March 8, 2022.

25. On March 8, 2022, shortly before 9:00 AM, before the start of trial that day at 9:00AM sharp, plaintiffs' counsel instructed his assistant to send an email to Mark Gottlieb "Since you say you have lost your file because you relocated, I will not call you today." Plaintiffs' counsel's assistant sent such email at 9:06 AM.

26. Based upon Mark Gottlieb's shocking call refusing to attend after stating that he had lost the client file, plaintiffs and their attorney had to make last-minute tactical changes. The critical change of tactic was to advise the Chancery Division judge presiding over the trial, at 9AM on March 8, 2022, that they would not be offering the testimony of their putative expert witness, defendant Gottlieb.

27. Based upon defendants' acts and omissions, the damages-case built upon defendants' expected attendance at trial became frustrated and had to be abandoned. After the trial was concluded on the afternoon of March 8, 2022, plaintiffs and plaintiffs' counsel

became aware that, while they were engaged in trial, defendant Gottlieb had left a message to the effect that defendants had located the client file. Plaintiffs and their counsel, however, did not receive such belated message until (1) they withdrew Gottlieb's trial line-up and (2) after the trial was concluded on March 8, 2022, by which time the tactic of withdrawing defendants' appearance could not be undone.

28. In any financial dispute, of the kind involved in the underlying dispute, the role of a putative expert witness is critical because they can provide the trial fact-finder with context, explanation of the finances, and provide a conclusion arising from the disputed records. When a putative expert witness is ultimately qualified to provide opinion-testimony in a trial, the results are frequently the difference between victory and loss.

29. In the underlying dispute, defendant Gottlieb would have been the only accountant and damages expert, as the underlying-defendants had not retained or disclosed any accounting witness during pretrial discovery. For this reason, defendants' role was critical but they refused to attend trial with the shocking story that they had "lost" all of the client materials and communications comprising "the file" during a recent office relocation, and had failed to be prepared in advance for the March 8 trial attendance.

30. Defendants' conduct was outrageous, irresponsible and grossly unprofessional. The actions of defendants, especially on the morning of trial, were outrageous and offensive in that Gottlieb's refusal to attend, along with his claimed "loss" of the client file, was a gross departure from a retained expert witness whose appearance had already been fully paid. Defendants' conduct warrants exemplary damages.

## PLAINTIFF'S CLAIMS FOR RELIEF

### Count One – Professional Malpractice

31. The preceding allegations are incorporated here, by reference.

32. Defendants owed a duty to plaintiffs to provide competent, professional service as a putative expert witness for damages analysis, and to attend trial and actually give testimony since their trial testimony was paid-for in advance.

33. The applicable standard, that of a reasonable, prudent, accounting expert, is to safeguard the client file; prepare reasonably in anticipation of a trial date; and attend trial and testify in accordance with the report prepared by such expert in advance, which would have been served well in advance of the actual trial date.

34. Defendant Gottlieb's last minute telephone call, early in the morning of March 8, 2022, when he was expected to testify, flatly refusing to attend trial that afternoon, constituted a breach of defendants' duty to plaintiffs. That call forced plaintiffs to modify their trial tactics and to abandon the expert testimony plaintiffs would have presented.

35. Defendants breached their duty by repudiating their duty to attend trial and serve in the capacity of independent accounting expert.

36. As a result of defendants' breach of duty, plaintiffs have suffered injury in the form of the inability to present proof of damages during their trial, thus rendering them to be on their own, as lay persons, to attempt to present accounting/bookkeeping damages. As a result of defendants' breach of duty, plaintiffs were unable to present evidence of their financial loss and the accumulated value of the loss over several years.

37. Due to defendants' acts and omissions, plaintiffs have been injured and are entitled to compensation.

### Count Two – Breach of Agreement

38. The preceding allegations are incorporated here, by reference.

39. There was an agreement between the parties. The agreement was negotiated and supported by consideration in the form of defendants' promise to provide a written narrative report and trial testimony and plaintiffs' promise of payment of defendants' fees. Plaintiffs performed their part of the agreement by paying all fees requested and billed by defendants. Defendants failed to perform and thereby breached the agreement.

40. Plaintiffs have suffered significant damages caused by defendants. Plaintiffs are entitled to compensation.

### Count Three – Breach of Fiduciary Duty

41. The preceding allegations are incorporated here, by reference.

42. Defendants were a fiduciary to plaintiffs, and owed a fiduciary duty to plaintiffs. The fiduciary duty obligated defendants to carefully receive, retain, and safeguard plaintiffs' client records and discharge their role at the trial of the underlying dispute.

43. By claiming to have lost such records and by repudiating their duty to attend trial, defendants beached their fiduciary duty to plaintiffs.

44. Plaintiffs have suffered significant damages caused by defendants. Plaintiffs are entitled to compensation.

### RELIEF REQUESTED

WHEREFORE, plaintiff demands judgment against the defendants and each of them jointly and severally for:

A. Compensatory damages;

B. Disgorgement of all fees paid;

C. Exemplary damages;

D. Professional fees, case expenses, and filing fees;

E. Pre-judgment interest and post-judgment interest; and

F. Any other relief the Court deems just and proper.

## REQUEST FOR TRIAL BY JURY

In accordance with Rule 38 of the Federal Rules of Civil Procedure, plaintiff requests trial by jury.

Dated: February 16, 2023                    /s/ Michael Kimm
                                            Michael S. Kimm
                                            KIMM LAW FIRM
                                            Attorneys for Plaintiffs